IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAURA MOAKLER,

   **Plaintiff,**

v.              1:16-cv-4451-WSD

FURKIDS, INC. and SAMANTHA
DEE SHELTON,

   **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Furkids, Inc.'s and Samantha Dee Shelton's (collectively "Defendants") Motion to Dismiss [5] for lack of subject matter jurisdiction ("Motion").

### I. BACKGROUND

Plaintiff Laura Moakler ("Moakler") worked as a Kennel/Vet Technician for Furkids, a domestic, charitable, nonprofit provider of pet care, from August 20, 2014, to August 1, 2016.  (Id. ¶ 12).  Samantha Shelton is its founder.

On June 2, 2016, Defendants were sent correspondence notifying them that Moakler had obtained counsel to represent her regarding FLSA overtime claims.  (Id. ¶ 28).  Ten days later, Defendants wrote up Moakler for working past 5:00 p.m. on Wednesday, June 8, 2016.  (Id. ¶ 30).  Defendants notified Moakler that

overtime would only be paid if it were approved and that she "would be terminated should she work overtime again." (Id. ¶¶ 31, 33). On August 1, 2016, Defendants terminated Moakler. (Id. ¶ 34). On December 1, 2016, Moakler filed this action, claiming that Furkids violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3) ("FLSA Antiretaliation Provision"), by terminating Plaintiff in retaliation for Plaintiff raising FLSA overtime claims.[1] (Compl. ¶¶ 27-38).

On March 10, 2017, Defendants moved to dismiss Moakler's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). ([5]). Defendants argue that the Court lacks subject-matter jurisdiction because "the FLSA does not apply to this case" since "Moakler's work for Furkids had nothing to do with interstate commerce." ([5 at 3-4]). Defendant purports to mount a "factual attack" on subject matter jurisdiction. ([5] at2 n.1). In support, Defendant offers the Declaration of Samantha Shelton. ([5-1]). Shelton states that she founded Furkids, Inc., which is "a 501(c)(3) nonprofit charitable organization that operates one of the largest cage-free, no-kill shelter in the Southeast for rescued cats." ([5-1] ¶ 2). Shelton asserts that Moakler worked only at the Furkids' cat shelter located in metro Atlanta, Georgia, and that rescued animals housed by Furkids are found within Georgia and

---

[1]  Plaintiff does not assert any claims for violation of the wage or overtime provisions of the FLSA.

are brought to Furkids by Georgia residents.  (Id. ¶¶ 4, 6).  Shelton further states that "Furkids' cat and dog shelters do not offer any services for fees to the general public, and donot [sic] engage in any ordinary commercial activities."  (Id. ¶ 7).  Shelton acknowledges that "Furkids operates a thrift store to raise money to care for its animal residents" but states that "Moakler did not work at the thrift store," the "thrift store is a completely separate operation from the cat shelter where Moakler worked," and Furkids is funded primarily through charitable donations.  (Id. ¶¶ 8, 9).

Shelton states that "Moakler's position as a kennel technician included giving food and water to the cats, changing litter, cleaning the facility, supervising the cats' interactions with each other and with guests, and otherwise ensuring the clean, safe, and humane care of Furkids' cat residents."  ([5-1] ¶ 12).  Shelton maintains that "Moakler has never provided commercial services on behalf of Furkids, or otherwise engaged in commerce."  ([5-1] ¶ 11).

On March 24, 2017, Moakler filed her Response.  ([6]).  Moakler maintains that "the central issue for the court on Defendants' Motion to Dismiss is whether Ms. Moakler can maintain an action under the FLSA's retaliatory discharge provision, 29 U.S.C. § 215(a)(3), even if Defendants' failure to pay overtime does not in fact constitute a violation of the overtime provision of the Act because the

employment relationship is not covered by the FLSA." ([6] at 2).  Moakler argues that she can "prevail on an FLSA retaliation claim even if she cannot establish individual or enterprise coverage."  (Id. at 3, citing Wirtz v. Ross Packaging Comp., 367 F.2d 549, 550-51 (5th Cir. 1966)).

Moakler asserts that "Defendants' Motion is not properly based on subject matter jurisdiction, and therefore, Defendants' extrinsic factual exhibits should not be considered."  (Id. at 3).  Nevertheless, Moakler requests that the Court take judicial notice of information posted on Defendants' website should the Court consider extrinsic evidence.  (Id. at 3).  Moakler contends that this information demonstrates that "Defendants operate adoption centers for five PetSmart locations and two PETCO locations, sell retail merchandise on-line and at the shelters, and operate three large thrift stores."  (Id. at 3-4, citing [6-1]).  Moakler cites Defendants' website as demonstrating that Defendants offer fee for services, like spay and neuter surgeries, to the public.  (Id. at 4, citing [6-1]).

Relying on audited financial statements published on Defendants' website, Moakler maintains that all of Defendants' economic activity "takes place under the umbrella of one business entity – Furkids, Inc., and are accounted for as one business in Defendant's set of financial statements."  (Id. at 4, citing [6-2]).  "It appears for Defendant Furkids, Inc.'s 2014 audited financial statements that

Furkids generated $601,210 in revenue from a combination of services provided in addition to sales from thrift stores." (Id. at 4, citing [6-2] at 6). "That same revenue amounted to $486,302 in 2015." (Id. at 4, citing [6-3] at 6).

Moakler also cites Defendants' website to state that "Defendants' rescued animals, donors, and adoptive owners come from various states nationwide." (Id. at 5, citing [6-4]). Moakler notes that "Defendants produced a video to advertise the cat shelter that went 'viral' around the world and generated an 'influx of donations from around the country, as well as adoption applications and inquiries from people interested in volunteering for the shelter.'" (Id. at 5, citing [6-4] at 2).

On April 7, 2017, Defendants filed a Reply. ([7]). Defendants argue that Wirtz is distinguishable because it did not involve "the total lack of connection to interstate commerce that is presented by Plaintiff's work at a local animal shelter caring for cats." (Id. at 6). Defendants maintain that applying the antiretaliation provision to Moakler "would undermine the constitutional requirement of interstate commerce and would extend the reach of that provision far beyond the reach of Congress' Commerce Clause power. . ." (Id. at 7 (emphasis in original)).

## II.   DISCUSSION

### A.   Legal Standards

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). They possess only that power authorized by the Constitution and conferred by Congress. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject-matter jurisdiction based on the allegations in a complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Id.

Factual attacks challenge subject-matter jurisdiction in fact. Id. When resolving a factual attack, the court may consider extrinsic evidence, such as testimony and affidavits. Id. In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not apply. Scarfo v. Ginsberg, 175 F.3d 957, 960-61 (11th Cir. 1999). "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear

the case . . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  The plaintiff has the burden to prove that jurisdiction exists.  Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006).

However, a "district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action."  Morrison, 323 F.3d at 925 (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997). "If a jurisdictional challenge does implicate the merits of the underlying claim then "[T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  Id.

  B. <u>The Fair Labor Standards Act</u>

The FLSA is "designed to protect workers from the twin evils of excessive work hours and substandard wages."  Howard v. City of Springfield, 274 F.3d 1141, 1148 (7th Cir. 2001).  The statute requires payment of minimum wages and compensation for overtime and gives employees deprived of these payments the right to receive them.  29 U.S.C. §§ 206, 216(b).  There are two possible types of

FLSA coverage.  <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1298-99 (11th Cir. 2011).  First, an employee may claim "individual coverage" if the employee regularly and directly participates in the actual movement of persons or things in interstate commerce.  <u>Id.</u>  Second, an employee may claim "enterprise coverage" if his employer (1) is in an enterprise engaged in commerce or in the production of goods for commerce and (2) has gross volume sales or business of at least $5000,000 annually.  <u>Id.</u>

The FLSA also contains an antiretaliation provision.  29 U.S.C. § 215(a)(3).  Section 215(a)(3) states "it shall be unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  To establish a prima facie case of FLSA retaliation a plaintiff must demonstrate: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."  <u>Wolf v. Coca–Cola Co.,</u> 200 F.3d 1337, 1342–43 (11th Cir. 2000).

### C. The Scope of the FLSA's Antiretaliation Provision

The central issue presented by Defendants' motion is whether the FLSA antiretaliation provision protects workers even if they are not covered under the FLSA wage and overtime provisions.[2]  Moakler argues, and the court agrees, that Wirtz controls.

The FLSA's antiretaliation provision applies more broadly than its wage and overtime provisions.

---

[2]  Plaintiff disputes whether Defendants' motion constitutes a proper Fed. R. Civ. P. 12(b)(1) attack on subject matter jurisdiction, arguing that "the applicability of the FLSA is not a jurisdictional issue, but rather an element of Ms. Moakler's claim" and therefore the Court should not consider extrinsic evidence. ([6] at 3). Defendants' maintain they have mounted a proper factual attack on subject matter jurisdiction and that, consequently, the Court should consider extrinsic evidence. ([7] at 2). "Strictly speaking a dismissal on [grounds sought by Defendants] would be under Fed. R. Civ. P. 12(b)(6) (failure to state a claim) rather than under Rule 12(b)(1) (lack of subject matter jurisdiction), but it makes no difference here." Sapperstein v. Hager, 188 F.3d 852, 856 (7th Cir. 1999) (reversing district court's dismissal for want of subject matter jurisdiction and holding antiretaliation provision of FLSA protects employees not covered by the wage and overtime provisions). This is a matter of statutory construction and facts relevant to jurisdiction are not in dispute. Plaintiff concedes that Moakler is not entitled to FLSA coverage as an individual that engaged in interstate commerce or was employed by an "enterprise" as defined in the statute. Nor does Plaintiff dispute that Moakler's job duties, as described in Shelton's declaration, involved only local activities. Though Plaintiff requests the Court take judicial notice of information on Defendants' website supporting the notion that Defendants engage in interstate commerce, and Defendants oppose consideration of those unauthenticated website printouts, that information is not relevant to the Court's determination and the Court need not resolve that dispute.

> Unlike the wage and hour provisions of Sections 6 and 7 of the Act, which apply only to an 'employee * * * engaged in commerce or in the production of goods for commerce,' the protections of Section 15(a)(3) apply, without qualification, to 'any employee.' The prohibitions of Section 15(a)(3) are similarly unlimited, for they are directed to 'any person.' Thus the clear and unambiguous language of the statute refutes the district court's view that either the employee or his employer must be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked.

Wirtz, 367 F.2d at 550-51[3]; Sapperstein, 188 F.3d at 856-57 (no requirement of FLSA violation to maintain retaliation action); Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012) ("the law in the Eleventh Circuit is clear that the lack of individual or enterprise coverage for an overtime claim does not defeat a retaliatory discharge claim under 29 U.S.C. 215(a)(3)"); Dean v. Pac. Bellwether, LLC, 996 F. Supp. 2d 1044, 1055 (D.N. Mar. I. 2014) ("FLSA retaliation claims do not have a commerce requirement," citing Wirtz, Sapperstein, and Joseph).

Defendants argue that Wirtz is distinguishable and urge the Court to adopt the holding in Lamont by finding that "[t]he anti-retaliation provision [of the FLSA] should be construed to apply only to those employees that Congress

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

10

intended to regulate under the Act. ([5] at 6-7, quoting <u>Lamont v. Frank Soup Bowl, Inc.</u>, No. 99 Civ. 12482(JSM), 2001 WL 521815, *4 (S.D.N.Y. May 16, 2001)).[4]  In particular, Defendants maintain that "the <u>Wirtz</u> case involved defendants who were undeniably involved in interstate commerce" where this case "presents the totally different question of whether this Court has subject matter jurisdiction in the first place, because the Commerce Clause does not allow Congress to regulate Moakler's employment caring for cats in a local animal shelter."[5]  ([5] at 8).

The unpublished decision in <u>Lamont</u> is not controlling and its holding contradicts the statutory language discussed in <u>Wirtz</u> and <u>Sapperstein</u>.  <u>Lamont</u> wrongly interprets the antiretaliation provision to be coextensive with the

---

[4] Defendants also cite <u>Altus Assisted Living, LLC v. Plantation Village Assisted Living, LLC</u>, No. Civ-07-1077-F, 2009 WL 82475, *2 (W.D. Okla. Jan. 9, 2009) and <u>Murray v. R.E.A.C.H. of Jackson County, Inc.</u>, 908 F. Supp. 337 (W.D.N.C. 1995) to support their contention that the antiretaliation provision cannot reach local activity.  ([5] at 7).  Neither case involved an FLSA retaliation claim.  And <u>Altus Assisted Living</u> recognized that the commerce test for FLSA coverage "does not fully utilize the powers granted by the Commerce Clause of the United States Constitution."  <u>Altus Assisted Living,</u> 2009 WL 82475 at *2.

[5] Defendants do not cite any authority justifying their narrow focus on the activities of "the specific cat shelter where [Moakler] worked," [7] at 3, instead of the activities of Furkids as a whole, when analyzing the scope of Congress' power under the Commerce Clause to subject Furkids to the prohibitions of the FLSA's antiretaliation provision.  But this issue does not impact the Court's analysis.

11

commerce provisions of the FLSA.  The Supreme Court's subsequent decision in Arbaugh v. Y & H Corp. also calls into question whether Lamont properly treated coverage under the FLSA as an issue of subject matter jurisdiction instead of an element of plaintiff's claim.  See Arbaugh v. Y & H Corp., 546 U.S. 500 (2006); Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 345 n.8 (E.D.N.Y. 2014) ("Lamont was decided prior to Arbaugh, and, in light of the express direction from the Second Circuit and the Supreme Court to look solely to the well-pleaded complaint to determine subject matter jurisdiction, and the weight of district court authority treating the question of enterprise coverage as an element of a plaintiff's claim, the Court declines to follow Lamont.").[6]

Lamont also fails to evaluate whether the antiretaliation provision of the FLSA is an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the *intrastate* activity were regulated."  See United States v. Lopez, 514 U.S. 549, 561 (1995) (emphasis added).  The Supreme Court in Kasten v. Saint-Gobain Performance Plastics, Corp., addressed the FLSA and the importance of the antiretaliation provision:

---

[6]   Our Circuit has not addressed "whether, after Arbaugh v. Y & H Corporation, enterprise coverage is a jurisdictional prerequisite."  Turcios v. Delicias Hispanas Corp., 275 F. App'x 879, 882 n.5 (11th Cir. 2008).

> The Act seeks to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). It does so in part by setting forth substantive wage, hour, and overtime standards. It relies for enforcement of these standards, not upon "continuing detailed federal supervision or inspection of payrolls," but upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied." Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). And its antiretaliation provision makes this enforcement scheme effective by preventing "fear of economic retaliation" from inducing workers "quietly to accept substandard conditions." Ibid.

Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 11-12 (2011).

Permitting protection of all employees, even those ultimately determined to be outside the wage provisions of the FLSA, is a rational means to achieve effective enforcement of the wage provisions. It promotes the reporting of potential violations by eliminating the risk that an employee would not be protected by the antiretaliation provision. "Determining whether there is an actual violation can mislead even an experienced district court, and a sensible employee who knew he had to be right to enjoy whistleblower protection would think twice about reporting conduct which might turn out to be lawful." Sapperstein, 188 F.3d at 857; see Mitchell, 361 U.S. at 293. A narrowing interpretation here would chill the reporting of potential FLSA violations and "limit the enforcement scheme's effectiveness." See Kasten, 563 U.S. at 12 (holding that the antiretaliation provision covers oral, as well as written, complaints); see also Payne v.

McLemore's Wholesale & Retail Store, 654 F.2d 1139, 1140 (5th Cir. Unit A 1981) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices."). "That the regulation ensnares some purely intrastate activity is of no moment." Gonzales v. Raich, 545 U.S. 1, 22 (2005) (Commerce Clause grants Congress authority to regulate intrastate marijuana activities because "Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the [Controlled Substances Act].").

Citing Department of Labor regulations, Defendants argue that "given the charitable nature of Furkids' animal shelter, its operations cannot in any way be considered 'economic activities' that substantially affect interstate commerce." ([5] at 6, citing 29 C.F.R. § 779.214).  The Court disagrees.  First, 29 C.F.R. § 779.214 applies to assessment of enterprise coverage under the FLSA, not the scope of activities Congress may regulate under the Commerce Clause.[7]  Second,

---

[7]    Defendants' reliance on Kitchings v. Florida United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282 (M.D. Fla. 2005) and Locke v. St. Augustine's

there is "no reason why the nonprofit character of an enterprise should exclude it from the coverage of either the affirmative or the negative aspect of the [Commerce] Clause." Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 584 (1997); Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296-99 (1985) (nonprofit religious organization's commercial activities are within FLSA's definition of "enterprise").

Defendants further argue that "[t]he statutory purpose of anti-retaliation is not served by extending it to protect those, like Moakler, who have no objectively reasonable underlying claim." ([5] at 10). The Court's reliance on long-standing precedent to reject Defendants' attack on subject matter jurisdiction does not extend protection to those who "have no objectively reasonable underlying claim." As recognized by Defendants ([5] at 10), this Court held in Burnette v. Northside Hosp., that to satisfy the first element of a prima facie FSLA retaliation claim, "the complaining employee must have an objectively reasonable good-faith belief that the employer's conduct is unlawful." 342 F. Supp. 2d, 1134-35 (N.D. Ga. 2004) (granting summary judgment of no FLSA retaliation after finding that Plaintiff did not engage in a protected activity). However, this is an element of Plaintiff's claim

---

Episcopal Church, 690 F. Supp.2d 77 (E.D. N.Y. 2010), is misplaced for the same reason.

and not amenable to resolution pursuant to a motion to dismiss for lack of subject matter jurisdiction.  Morrison, 323 F.3d at 925.

The Court rejects Defendants' argument that interpreting the antiretaliation provision to cover Moakler "extend[s] the FLSA into constitutionally forbidden territory."  ([7] at 8).  Moakler's Complaint raises a claim under the FLSA that presents a federal question.  Defendants' attack on subject matter jurisdiction fails.

D. The Sufficiency of Plaintiff's Pleading

Even if the Court converted Defendants' Motion to Dismiss for lack of subject matter jurisdiction to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it would still be denied.  On a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."
Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009);

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also White v. Bank of America, NA, 597 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt., Ltd. V. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

With respect to the first element of Plaintiff's retaliation claim, Moakler alleged in her complaint that "Plaintiff engaged in statutorily protected activity under the FLSA by, *inter alia*, opposing an employment practice she believed was

17

unlawful under the FLSA, e.g. by retaining counsel and, through counsel, advising Defendant of her FLSA claim for unpaid overtime." (Compl ¶ 41; see also Compl. ¶ 28). Moakler's allegation that she sought advice from counsel, and asserted her FSLA claim through counsel, alone raises a reasonable expectation that discovery will reveal evidence that Plaintiff engaged in protected activity with an objectively reasonable good-faith belief that her employer's conduct was unlawful. With respect to the second element, it is undisputed that Defendant terminated Moakler after Moakler made a claim for unpaid overtime and, thus, suffered an adverse employment action. (Compl ¶ 34). Finally, Moakler's allegations concerning Defendants' newfound concern about overtime, disciplinary action for working overtime, and the relatively short duration between Moakler's claim for unpaid overtime and her termination constitutes a sufficient pleading of the third element of causation. (Compl ¶¶ 28-34).

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [5] is **DENIED.**

**SO ORDERED** this 4th day of December, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE